**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| XIAN CHEN PAN,<br><br>*Plaintiff,*<br><br>v.<br><br>CITIBANK, N.A., BANK OF AMERICA, N.A., THE PNC FINANCIAL SERVICES GROUP, INC., EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION, LLC,<br><br>*Defendants.* | **Case No.:**<br><br>**Jury Trial Demanded** |

## COMPLAINT

Xian Chen Pan ("Plaintiff" or "Pan"), by and through her attorneys, Kimmel & Silverman, P.C., alleges the following against CitiBank, N.A. ("CitiBank"), Bank of America, N.A. ("Bank of America" or "BOA"), The PNC Financial Services Group, Inc. ("PNC"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion, LLC ("TransUnion") (hereinafter collectively referred to as "Defendants"):

## INTRODUCTION

Plaintiff's Complaint is based on Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). The factual and legal basis for those violations is set forth below:

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the FCRA claims in this action under 15 USC § 1681p, which states that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the

amount in controversy", and under 28 U.S.C. § 1331 which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the Commonwealth of Pennsylvania and because the occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the Commonwealth of Pennsylvania.

4. TransUnion maintains its headquarters in the Commonwealth of Pennsylvania and specifically within this District.

5. A substantial part of the events or omissions giving rise to the claim occurred in this District.

6. For those reasons, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**PARTIES**

7. Plaintiff is a natural person who at all times relevant hereto resided in Philadelphia, Pennsylvania.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) of the FCRA and 15 USC § 1692a of the FDCPA.

9. Defendant CitiBank is a corporation whose principal place of business is 388 Greenwich Street, 26th Floor, New York, NY 10013.

10. Defendant PNC is a corporation whose principal place of business is 300 Fifth Avenue, Pittsburgh, PA 15222.

11. Defendant Bank of America is a corporation whose principal place of business is 100 North Tryon Street, Charlotte, NC 28255.

12. Defendants PNC, CitiBank and BOA are each a "person" as that term is defined by 15 U.S.C. § 1681a(b), and a "furnisher" of credit information as described by 15 U.S.C. § 1681s-2.

13. Defendant Experian is a business entity that regularly conducts business in the Commonwealth of Pennsylvania, with its headquarters at 75 Anton Blvd., Costa Mesa, California 92626.

14. Defendant Equifax is a business entity that regularly does business in the Commonwealth of Pennsylvania, with its headquarters at 1550 Peachtree St NE, Atlanta, Georgia 30309.

15. Defendant TransUnion is a business entity that regularly conducts business in the Commonwealth of Pennsylvania, with its headquarters at 1510 Crum Lynne, Pennsylvania 19022.

16. Defendants Equifax, Experian, and TransUnion are each a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

17. Equifax, Experian and TransUnion are collectively referred to as "the CRAs."

18. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

19. Plaintiff is and at all times relevant to was a resident of Philadelphia, Pennsylvania.

20. Prior to August of 2025, Plaintiff was married to her now ex-husband, Guisheng Pan ("Mr. Pan").

21. During their marriage, Plaintiff was a full-time housewife. Mr. Pan exercised significant control over their household finances and did not allow Plaintiff to control her money or view financial statements.

22. The only account of which Plaintiff was aware was a joint PNC checking account she shared with Mr. Pan.

23. Taking advantage of his wife's trust and lack of financial sophistication, Mr. Pan opened numerous credit card accounts in Plaintiff's name with PNC, Bank of America, and CitiBank on various occasions from 2018 through 2023.[1]

24. Mr. Pan ultimately drew large cash advances from those credit accounts without Plaintiff's knowledge or consent. Excerpts of Plaintiff's Experian credit report demonstrating the accounts at issue are attached as Exhibit A. Likewise, excerpts of Plaintiff's Equifax credit report are attached as Exhibit B and excerpts of Plaintiff's TransUnion credit report are attached as Exhibit C.

25. Plaintiff did not approve of those large cash withdrawals, nor did she benefit in any way from the use of those funds.

26. To the contrary, as set forth in greater length below, those funds were taken by Mr. Pan when he fled to China, abandoning Plaintiff and their family.

27. Moreover, a significant sum of money was sent by Mr. Pan to his girlfriend/mistress – something which Plaintiff, of course, opposes.

28. Accordingly, the money was used to Plaintiff's detriment, rather than benefit, and completely without her knowledge or permission.

---

[1] In addition to the credit accounts fraudulently opened by her ex-husband from 2018 through 2023, Plaintiff has a Citibank credit card account opened in 2004 and a Bank of America credit card account opened in 2005, of which she was not aware and did not utilize. Her ex-husband made fraudulent transfers from those accounts to his cryptocurrency account in recent years. All of those transactions were without Plaintiff's knowledge or permission and from which she did not benefit in any capacity.

29. Mr. Pan utilized nine (9) separate Bank of America accounts in Plaintiff's name, seven (7) of which have current balances in excess of $20,000 and as high as $79,000. *See* Exhibits A, B, and C.

30. Mr. Pan utilized at least three (3) PNC accounts in Plaintiff's name, one of which has a current balance of $26,164. *Id.*

31. Mr. Pan utilized at least five (5) accounts in Plaintiff's name with CitiBank, one of which has a current balance of $18,623. *Id.*

32. Plaintiff did not authorize any of the transactions giving rise to the alleged debts with any of the aforementioned banks and had no knowledge of those transactions or alleged debts until at least November 2025.

33. In total, Mr. Pan opened and/or utilized without permission, at least seventeen (17) credit card accounts in Plaintiff's name, with combined current balances totaling over $250,000.

34. Upon information and belief, those funds from Plaintiff's credit accounts were transferred by Mr. Pan into CoinBase and possibly other cryptocurrency accounts, of which Plaintiff has no knowledge or access.

35. On August 8, 2025, Plaintiff filed for divorce against Mr. Pan.

36. On or around December 12, 2025, before the divorce proceedings had been completed, Mr. Pan unexpectedly left the household.

37. Upon information and belief, he left the United States and relocated to China, where he currently resides.

38. The funds withdrawn from Plaintiff's credit accounts were used to pay Mr. Pan's new girlfriend and finance his relocation to China.

39. That same day - December 12, 2026 - Plaintiff conducted a review of her credit history, whereupon she first discovered the numerous fraudulent Bank of America, PNC, and CitiBank accounts which her opened in her name without her authorization, as well as the high balances in those accounts which she did not authorize or have any knowledge.

40. Later in December 2025, Plaintiff visited a PNC branch at 2401 Welsh Road, Philadelphia, PA 19114 to inquire into the status of her joint account.

41. To Plaintiff's shock and dismay, PNC's employees informed Plaintiff that most of the funds in the account – totaling hundreds of thousands of dollars – had been transferred to a Coinbase account between July and December of 2025, and only around $8,000 remained. PNC also informed Plaintiff that the account had been closed. She has not been able to access those funds since.

42. On December 24, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission, which is attached as Exhibit D.

43. Plaintiff supplemented with another Identity Theft Report in May of 2026, when the full scope of her ex-husband's fraud came to light. A true and correct copy of the May 2026 FTC Identity Theft Report is attached as Exhibit E.

44. Plaintiff also filed several police reports with the Philadelphia Police Department, including Fraud Reports dated November 24, 2025 and December 23, 2025, which are attached as Exhibit F and Exhibit G respectively.

45. Plaintiff filed a December 13, 2025 Domestic Dispute report with the Philadelphia Police Department, describing the portion of her husband's theft/fraud that was known. A true and correct copy of the December 13, 2025 report is attached as Exhibit H.

46. PNC, Bank of America, and CitiBank each furnished information to the CRAs indicating that Plaintiff held these accounts with various current and/or historic high balances.

47. Experian, Equifax, and TransUnion each published varying portions of the aforementioned information, furnished by PNC, Bank of America and CitiBank on Plaintiff's consumer reports.

48. Plaintiff has disputed the validity of these accounts directly with PNC, Bank of America, and CitiBank.

49. On February 19, 2026, PNC's investigation erroneously concluded that Plaintiff was responsible for the fraudulent transfers. The results of Plaintiff's direct dispute to PNC are attached as Exhibit I.

50. Bank of America separately investigated each account, which each erroneously concluded between April and May of 2026 that Plaintiff was responsible for the fraudulent transfers. The results of Plaintiff's disputes to Bank of America are attached as Exhibit J.

51. On May 6, 2026, CitiBank's investigation erroneously concluded that Plaintiff was responsible for the fraudulent transfers. The results of Plaintiff's dispute to CitiBank are attached as Exhibit K.

52. On June 10, 2026, Plaintiff disputed the aforementioned credit accounts with Equifax, Experian, and TransUnion. Plaintiff's disputes to the CRAs are attached as Exhibit L.

53. In each dispute, Plaintiff articulated with specificity the above facts as to why she was not responsible for the accounts at issue. *See* Ex. L.

54. On July 17, 2026, TransUnion's reinvestigation concluded that one of the disputed accounts should be removed, but erroneously concluded that all other disputed accounts were accurate. The results of Plaintiff's dispute to TransUnion are attached as Exhibit M.

55. On July 22, 2026, Equifax's reinvestigation erroneously concluded that each and every disputed account was accurate and verified those accounts. The results of Plaintiff's dispute to Equifax are attached as Exhibit N.

56. On August 20, 2026, Experian's reinvestigation erroneously concluded that most of the disputed accounts were accurate. The results of Plaintiff's dispute to Experian are attached as Exhibit O.

57. Plaintiff's credit score has been negatively affected by this inaccurate credit information, causing emotional distress, anguish, sleep loss, loss of time, loss of enjoyment, aggravation, and potential loss of income.

58. Plaintiff has also been denied credit opportunities and abstained from seeking lines of credit she would have otherwise sought as a direct and proximate result of Defendants' acts and omissions described above.

**COUNT I**
**DEFENDANTS VIOLATED § 1681s-2(b) OF THE FCRA**
***(Pan v. PNC, Bank of America, and CitiBank)***

59. Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein.

60. At all times relevant hereto, PNC, Bank of America, and CitiBank were each a "person" as that term is defined by 15 U.S.C. § 1681a(b), and a "furnisher" of credit information as described by 15 U.S.C. § 1681s-2.

61. After a furnisher is notified of a consumer dispute with a consumer reporting agency, 15 U.S.C. § 1681s-2(b) of the FCRA requires that furnishers conduct an investigation with respect to the dispute, report the results of the dispute to the CRA, and modify or delete the information if found inaccurate.

62. PNC, Bank of America, and CitiBank violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

63. The conduct of PNC, Bank of America, and CitiBank was a direct and proximate cause, as well as a substantial factor in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above.

64. As a result, PNC, Bank of America, and CitiBank are each liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

## COUNT II
## DEFENDANTS VIOLATED § 1681i OF THE FCRA
***(Pan v. Experian, Equifax and TransUnion)***

65. Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein.

66. At all times relevant hereto, Experian, Equifax, and TransUnion were each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

67. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

68. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

69. 15 U.S. Code § 1681i(a)(1)(A) provides that:

> [i]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information

> is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

70. The CRAs failed to conduct a reasonable reinvestigation of the disputed information, because a reasonable reinvestigation would have found that Plaintiff did not owe PNC, Bank of America, or CitiBank for the fraudulent transfers.

71. Pursuant to 15 U.S.C. §§ 1681n and 1681o, the CRAs are liable to Plaintiff for negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. § 1681i.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, XIAN CHEN PAN respectfully prays for judgment as follows:

a. Statutory, actual and punitive damages against Defendants PNC, Bank of America, and CitiBank, Experian, Equifax, and TransUnion pursuant to 15 U.S.C. §§ 1681n and 1681o;

b. All reasonable attorneys' fees, witness fees, court costs and other litigation costs, pursuant to 15 U.S.C. § 1692k(a)(3) and 15 U.S.C. § 1681n(c); and

c. Any other relief deemed fair and proper by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, XIAN CHEN PAN, demands a jury trial in this case.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Pennsylvania Attorney ID No. 311908
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864

Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Dated: September 25, 2026